IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TWILA DENISE COLE                                                              PLAINTIFF

V.                                            NO. 15-2041

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                  DEFENDANT

**MAGISTRATE JUDE'S REPORT AND RECOMMENDATION**

Plaintiff, Twila Denise Cole, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for supplemental security income (SSI) under the provisions of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.      Procedural Background:**

Plaintiff filed her application for SSI on May 11, 2012, alleging disability since July 1, 1991, due to carpal tunnel, back/neck/foot problems, and fibromyalgia. (Tr. 105-111, 136, 139). SSI is not payable prior to the month following the month in which the application was filed, and therefore, the relevant time period is from the application date through the date of the decision. An administrative hearing was held on July 29, 2013, at which Plaintiff appeared with counsel and testified. (Tr. 23-46).

By written decision dated October 25, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe –

1

carpal tunnel syndrome, fibromyalgia, and back and neck pain. (Tr. 1). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 11). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. 416.967(b), except handle and finger on a bilateral basis frequently. (Tr. 11). With the help of the vocational expert (VE), the ALJ determined there were jobs that Plaintiff would be able to perform, such as waitress and maid/housekeeper/cleaner. (Tr. 15-16).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on February11, 2015. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 12, 13).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Evidence Presented:**

In June and August of 2006, Dr. Roger N. Bise performed carpal tunnel surgery on Plaintiff's hands. (Tr. 358, 365). On November 24, 2006, Dr. Bise found that there was no reason Plaintiff could not return to some form of work, and released her for regular duty. (Tr. 353). In December of 2008, a MRI of Plaintiff's lumbar spine revealed no identifiable disk herniation or other acute abnormality. (Tr. 209). Dr. Stephen Carney, of Cornerstone Medical Clinic, was Plaintiff's treating physician during the relevant time period. In 2011, Plaintiff was seen by Dr. Carney on numerous occasions, and Dr. Carney diagnosed her at various

2

visits with back pain, anxiety, GERD, menopausal symptoms, dysmenorrhea, and osteoarthritis. (Tr. 224, 227, 229, 231, 233, 235, 237). On January 9, 2012, Dr. Carney noted that Plaintiff was a heavy smoker, and continued to give diagnoses of osteoarthritis, anxiety, and GERD. (Tr. 218-219, 294). On March 10, 2012, x-rays of Plaintiff's chest revealed granulomatous calcifications, and no acute infiltration and mild hyperinflation. (Tr. 212). On May 7, 2012, Plaintiff complained to Dr. Carney that she hurt "all over," and Dr. Carney again diagnosed Plaintiff with osteoarthritis, anxiety, and GERD. (Tr. 292). Plaintiff saw Dr. Carney on June 11, 2012, complaining of a cyst on her right elbow (Tr. 328), and on July 10, 2012, reported to Dr. Carney that she was "doing well." (Tr. 326).

On July 12, 2012, non-examining consultant, Dr. Steven Strode, completed a Physical RFC Assessment form. (Tr. 313-320). Dr. Strode found Plaintiff would be able to perform light work. (Tr. 320).

On September 10, 2012, Plaintiff saw Dr. Carney for a checkup and medication refills, and complained of severe epigastric pain and discomfort. (r. 324). Dr. Carney diagnosed Plaintiff with osteoarthritis, anxiety, and PUD (peptic ulcer disease). (Tr. 325). The same diagnosis was given by Dr. Carney on November 9, 2012. (Tr. 380).

On November 26, 2012, non-examining consultant, Dan Donahue, Ph.D., completed a Psychiatric Review Technique form, wherein he found that Plaintiff did not have a severe mental impairment. (Tr. 342).

On November 27, 2012, a Case Analysis was completed by non-examining consultant, Dr. Dan Gardner, who affirmed Dr. Strode's assessment dated July 12, 2012, as written. (Tr. 346).

3

On March 11, 2012, Plaintiff reported to Dr. Carney that she was "doing well." (Tr. 375). Dr. Carney diagnosed Plaintiff with osteoarthritis, anxiety and insomnia. (Tr. 376). Plaintiff presented to Dr. Carney on March 21, 2013, with a disability form for Dr. Carney to complete. (Tr. 373). On March 23, 2013, Dr. Carney completed the RFC Questionnaire, wherein he diagnosed Plaintiff with osteoarthritis, reported that she suffered from low back pain and shoulder and neck pain, and had associated weakness. (Tr. 350). Dr. Carney opined that Plaintiff's symptoms were frequently severe enough to interfere with the attention and concentration required to perform simple work-related tasks, and that medications might cause drowsiness and loss of balance. (Tr. 350). Dr. Carney found Plaintiff could occasionally lift and carry up to 10 pounds, had limitation in reaching, handling or fingering, and would miss work more than four times a month. (Tr. 351).

Plaintiff saw Dr. Carney on May 13, 2013, wanting an increase in her Lorcet, and on July 12, 2013, complained of continued back pain and anxiety. (Tr. 387). Dr. Carney diagnosed Plaintiff with osteoarthritis, anxiety, and insomnia. (Tr. 388).

On July 22, 2013, Plaintiff presented to Sparks Obstetrics and Gynecology, with abnormal bleeding. (Tr. 390). Dr. Erica N. Horn reported that Plaintiff smoked two packs of cigarettes per day, had severe back pain, and knew that she had an addiction to pain pills. (Tr. 390). Plaintiff was counseled on tobacco cessation. (Tr. 391). It was also reported that Plaintiff was negative for anxiety, depression and psychiatric symptoms, negative for back pain and joint pain, and positive for bone/joint symptoms and myalgia. (Tr. 393-393). The Assessment/Plan was "irregular menstruation" and "drug dependence, abuse" and it was recommended that Plaintiff consider rehab. (Tr. 394).

**III.    Applicable Law:**

4

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

5

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her RFC.  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

**IV.   Discussion:**

Plaintiff raises the following issues in this matter:  1) The ALJ failed to fully develop the record; 2) The ALJ failed in his credibility analysis; and 3) The ALJ erred in his RFC determination. (Doc. 12).

**A.  Failure to Fully Develop the Record:**

Plaintiff argues that the ALJ should have sought further clarification regarding Dr. Carney's RFC form.  The ALJ has a duty to fully and fairly develop the record.  See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir. 1995); Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000).  This is particularly true when Plaintiff is not represented by counsel.  Payton v. Shalala, 25 FG.3d 684, 686 (8th Cir. 1994).  This can be done by re-contacting medical sources and by ordering additional consultative examinations, if necessary.  See 20 C.F.R. § 404.1512.  The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press her case.  Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010).  However,

6

the ALJ is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record.  See Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995)("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial").  "The regulations do not require the Secretary or the ALJ to order a consultative evaluation of every alleged impairment.  They simply grant the ALJ the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination."  Matthews v. Bowen, 879 F.2d 423, 424 (8th Cir. 1989).  "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis."  Mans v. Colvin, No. 13-CV-2103, 2014 WL 3689797 at *4 (W.D. Ark., July 24, 2014)(quoting Battles v. Shalala, 36 F.3d 43, 45 (8th Cir. 1994).

In his decision, the ALJ discussed Dr. Carney's RFC Questionnaire, noting that he opined that Plaintiff would be unable to work full time. (Tr. 14).  The ALJ reported that Dr. Carney's previous treatment notes did not record any significant limitations due to the alleged impairments. (Tr. 14).  The ALJ correctly pointed out that Dr. Carney treated Plaintiff's impairments conservatively with prescription medications, and never referred Plaintiff to a specialist. (Tr. 14).  Dr. Carney's opinion that Plaintiff could only sit two hours and stand/walk one hour in an eight-hour workday were not supported by any clinical tests results or findings, and were inconsistent with his own treatment records.

In addition, the opinion of non-examining consultant, Dr. Strode, was fully supported by the objective medical evidence, and the ALJ was justified in giving Dr. Strode's opinion great weight.

Based upon the foregoing, as well as for those reasons given in Defendant's well stated brief, the Court believes there was sufficient medical evidence before the ALJ for him to make a determination.

**B. Credibility Analysis:**

Plaintiff argues that the ALJ did not perform a proper Polaski v. Heckler analysis in terms of credibility. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

In his decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely credible. (Tr. 13). The ALJ also reported that he considered Plaintiff's subjective complaints of pain and the factors set forth in Polaski. (Tr. 15). The ALJ discussed the fact that Plaintiff helped her ill mother as much as she could; prepared meals daily; cleaned and did laundry; shopped in stores; and drove a car. (Tr. 13). The ALJ also noted that no physician placed any functional restrictions on her activities. The ALJ discussed the fact that Plaintiff was diagnosed with

8

drug dependence/abuse, and was counseled on smoking cessation.  (Tr. 13).  There is no indication that Plaintiff quit smoking, which detracts from Plaintiff's credibility. See Brown v. Barnhart, 390 F.3d 535, 540-541 (8th Cir. 2004)(citations omitted)("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits.").

Based upon the foregoing, the Court believes there is substantial evidence to support the ALJ's credibility analysis.

### C.  RFC Determination:

Plaintiff argues that the medical evidence in this case supports a more substantially restrictive RFC and that the ALJ improperly discounted Dr. Carney's assessment.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record.  Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  Lauer v. Apfel,  245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.  "The ALJ is permitted to base its RFC determination on 'a non-examining physician's

9

opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 20    13).

With respect to weight given to the opinions of treating physicians, "[a] claimant's treating physician's opinion will generally be given controlling weight, but it must be supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record." Andrews v. Colvin, No. 14-3012, 2015 WL 4032122 at *3 (8th Cir. July 2, 2015)(citing Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014).  "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Id. "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned." Id

In determining Plaintiff's RFC, the ALJ discussed the treatment records of Dr. Bise, Dr. Carney, and Sparks Obstetrics and Gynecology. (Tr. 12-13).  He also discussed the MRI study of Plaintiff's lumbar spine. (Tr. 12).  The ALJ discussed Plaintiff's own complaints of pain, and found that Plaintiff's ability to perform her activities of daily living, in conjunction with the medial evidence demonstrating minimal abnormalities, reflected a significant functional capacity and not an individual unable to sustain regular and continuing work due to medically determinable impairments. (Tr. 14).  He also noted that Dr. Carney treated her conservatively. (Tr. 13).  The ALJ then carefully discussed why he gave little weight to Dr. Carney's RFC assessment, noting that he had no clinical or diagnostic support for the severe

limitations he attributed to Plaintiff. (Tr. 14). He concluded that Dr. Carney's opinion overstated Plaintiff's limitations, and also noted that Dr. Carney's statement that Plaintiff would not be able to work is reserved to the Commissioner. (Tr. 14). The ALJ gave Dr. Strode's opinion great weight, finding it was fully supported by the objective medical evidence. (Tr. 140).

After carefully reviewing the record as a whole, the Court believes there is substantial evidence to support the ALJ's RFC determination and the weight he gave to the various medical opinions.

### D. Hypothetical Question to VE:

At the hearing, the ALJ posed the following hypothetical to the VE:

Q: Assume an individual with the same age, education, and work experience as that of the claimant who is able to lift and/or carry 20 pounds occasionally, lift and or carry 10 pounds frequently; stand and/or walk six hours out of an eight-hour workday with normal breaks; sit six hours out of an eight-hour workday with normal breaks; push and pull with limitations pursuant to the lift/carry limitations; able to handle on a bilateral basis frequently; able to finger on a bilateral basis frequently. Could an individual with these limitations perform work that is found in the national or regional economies?

A: Based on the hypothetical that's been presented, the individual would be limited to light exertional level work. On example that would fit the hypothetical that's been presented would be that of a waitress…Another job would be that – that would fit that criteria [sic] would be that of a maid or housekeeping cleaner…

(Tr. 43-44).

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the

11

Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing the jobs of waitress, maid/housekeeper/cleaner. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

## V.     Conclusion:

Accordingly, the undersigned recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 5th day of November, 2015.

*s/ Erin L. Setser*
   HON. ERIN L. SETSER
    UNITED STATES MAGISTRA